# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WESTMINSTER AMERICAN** | : | **CIVIL ACTION** |
| **INSURANCE COMPANY** | : | |
| *Plaintiff* | : | **NO. 19-539** |
| | : | |
| **v.** | : | |
| | : | |
| **SPRUCE 1530, LLC,** *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                    JUNE 17, 2020

## MEMORANDUM OPINION

### INTRODUCTION

This is a declaratory judgment action brought pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, by Westminster American Insurance Company ("Westminster"), as the insurer, to determine whether Westminster is obligated to defend and/or indemnify Defendants Spruce 1530, LLC and Al Shapiro (collectively, "Spruce 1530") in an underlying state court civil action filed against Spruce 1530 by non-party Touraine, L.P. ("Touraine"). Before this Court are the following: Westminster's motion for summary judgment, [ECF 10], Spruce 1530's cross-motion for partial summary judgment [ECF 14], and the parties' respective responses [ECF 15, 17, 20]. The issues raised in these motions have been fully briefed and are ripe for disposition. For the reasons set forth herein, this Court finds that Westminster is not obligated to defend and/or indemnify Spruce 1530. Therefore, Westminster's motion for summary judgment is granted, judgment is entered in its favor, and Spruce 1530's motion for partial summary judgment is denied.

### BACKGROUND

This matter has a protracted procedural history that encompasses multiple state court civil actions and a prior action before this Court. Briefly, the uncontested, relevant facts to the cross-

motions for summary judgment are as follows:[1]

Spruce 1530 owns a parcel of real estate property located at 1530-1532 Spruce Street, Philadelphia, Pennsylvania, on which a multistory apartment building owned by Spruce 1530 (the "Newport Building") is located. Defendant Shapiro is the managing principal member of Defendant Spruce 1530, LLC.

Touraine owns the adjacent parcel of real estate, located at 1520-1528 Spruce Street, on which a multistory apartment building (the "Touraine Building") is located. The Touraine Building and the Newport Building are immediately adjacent to one another, such that the buildings meet at the Newport Building's eastern wall and the Touraine Building's western wall.

In 2015, Spruce 1530 and Touraine filed separate lawsuits against each other in state court over the property line between the properties and certain improvements to the Newport Building that allegedly extended over the property line and into the Touraine Building. These cases were consolidated (collectively, the "2015 Actions") and tried without a jury before the Honorable Gene Cohen in 2016. Judge Cohen found that Spruce 1530 improperly encroached onto Touraine's property, and awarded Touraine injunctive relief and $111,570 in monetary damages.

After judgment in the 2015 Actions was entered against Spruce 1530, Spruce 1530 entered into a separate settlement agreement and mutual release with its insurer, Westminster, in which Westminster agreed to pay $52,500 towards the judgment entered against Spruce 1530. Previously, Spruce 1530 had obtained commercial liability insurance from Westminster (the "Policy") for successive annual policy periods commencing on February 15, 2015 and continuing through February 15, 2018.

In November 2017, Touraine filed another civil action against Spruce 1530 in the Philadelphia Court of Common Pleas (the "Underlying State Action"), alleging that *throughout* the 2015 Actions, Spruce 1530 pursued frivolous claims and engaged in abusive practices, seeking to drive up litigation costs "for the improper purpose of coercing Touraine to cede ownership of its real property to [Spruce] 1530." Based on these allegations, Touraine asserted two claims in the

---

[1]     In reviewing a motion for summary judgment, the Court must "consider all evidence in the light most favorable to the party opposing the motion." *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 974 (3d Cir. 2007). Because an insurer's duty to defend an action against its insured is initially determined on the basis of the allegations contained in the underlying complaint against the insured, most of the facts set forth in this section are drawn from the state court complaint in the Underlying State Action. *See State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 108 n.3 (3d Cir. 2009) (citing *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290-92 (Pa. 2007)). However, some facts in this section are drawn from the parties' respective motions and responses thereto. While most of the facts material to the parties' cross-motions are undisputed, this Court has construed any disputed facts in favor of Spruce 1530.

Underlying State Action, *to wit*: wrongful use of civil proceedings under the Dragonetti Act, 42 Pa. Cons. Stat. § 8351 *et seq.* (Count I), and common-law abuse of process (Count II).  Spruce 1530 filed preliminary objections and on June 18, 2018, the Honorable Karen Shreeves-Johns issued an order sustaining the preliminary objections as to Count I, the wrongful use of civil proceedings claim, and overruling the preliminary objections as to Count II, the abuse of process claim. The court did not issue an opinion to explain its reasoning.

One month *after* the wrongful use of civil proceedings claim (Count I) was dismissed, Spruce 1530 notified Westminster for the first time of the Underlying State Action.  Westminster sent Spruce 1530 return correspondence disclaiming coverage.   Thereafter, Westminster initiated this declaratory judgment action, seeking this Court's declaration that Westminster has no duty to defend and/or indemnify Spruce 1530 in the Underlying State Action.  The parties filed the instant cross-motions for summary judgment without conducting discovery and, collectively, acknowledge that the resolution of this matter turns exclusively on questions of law.

**LEGAL STANDARD**

Federal Rule of Civil Procedure ("Rule") 56 governs the practice of summary judgment motions.  Fed. R. Civ. P. 56.  Specifically, this rule provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.*  A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  Under Rule 56, the court must view the evidence in the light most favorable to the non-moving party.  *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011). At summary judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.  *Id.* at 251-52.

The standards to be applied in deciding cross-motions for summary judgment are the same as those applied when only one party has filed a summary judgment motion; the court rules "on

each party's motion on an individual and separate basis, determining, for each side, whether [summary] judgment may be entered in accordance with the Rule 56 standard." *Auto-Owners Ins. Co. v. Stevens & Ricci, Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (citation and internal quotation marks omitted). "If upon review of cross-motions, the court finds 'no genuine dispute over material facts,' then judgment may be entered 'in favor of the party deserving judgment in light of the law and undisputed facts.'" *Coulter v. Receivables Mgmt. Sys.*, 367 F. Supp. 3d 307, 311 (E.D. Pa. 2019) (quoting *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302 (3d Cir. 1998)).

**DISCUSSION**

The issue before this Court is whether Westminster has a duty to defend and/or indemnify Spruce 1530 in the Underlying State Action. Under Pennsylvania insurance law,[2] an insurer's duty to defend is broader than its duty to indemnify. *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 225 (3d Cir. 2005). "Necessarily, therefore, the analysis must begin with an evaluation of the duty to defend." *IDS Prop. Cas. Ins. Co. v. Schonewolf*, 111 F. Supp. 3d 618, 623 (3d Cir. 2015) (quoting *Sikirica*, 416 F.3d at 225).

Whether an insurer owes a duty to defend an insured in a lawsuit brought against the insured is dependent on the allegations in the underlying complaint and on the language of the insurance policy at issue. *See Mehlman*, 589 F.3d at 110 (citing *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290-92 (Pa. 2007)). That is, a "carrier's duty to defend . . . an insured in a suit brought by a third party depends upon a determination of whether the third party's

---

[2]       The parties focus their legal arguments exclusively on Pennsylvania law. Moreover, the Underlying State Action is pending in Pennsylvania state court, and the Policy makes repeated reference to the laws of the "state where the premises described are located"—in this case, Pennsylvania. Accordingly, this Court will treat the decisions of the Pennsylvania Supreme Court as binding precedent and the decisions of the Pennsylvania Superior Court as persuasive precedent. *Mehlman*, 589 F.3d at 108 n.2 (citing *Jewelcor Inc. v. Karfunkel*, 517 F.3d 672, 676 n.4 (3d Cir. 2008)).

complaint triggers coverage." *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006) (quoting *Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999)).  Courts should "look to the language of the policies themselves . . . and then examine [the underlying] complaint," *Kvaerner*, 908 A.2d at 896-97, in order to evaluate "whether, if the allegations [in the underlying complaint] are sustained, the insurer would be required to pay [the] resulting judgment." *Sabia Landscaping v. Merchs. Mut. Ins. Co.*, 2013 WL 6022129, at *2 (E.D. Pa. Nov. 6, 2013) (quoting *Donegal*, 938 A.2d at 290).  "It does not matter if in reality the facts [alleged in the underlying complaint] are completely groundless, false or fraudulent.  It is the face of the complaint and not the truth of the facts alleged therein which determines whether there is a duty to defend." *D'Auria v. Zurich Ins. Co.*, 507 A.2d 857, 859 (Pa. Super. Ct. 1986).  Allegations in the underlying complaint must be "liberally construed with all doubts as to whether the claims may fall within the coverage of the policy to be resolved in favor of the insured." *Roman Mosaic & Tile Co. v. Aetna Cas. & Sur. Co.*, 704 A.2d 665, 669 (Pa. Super. Ct. 1997).

### *The Policy*

The parties agree that to the extent the claims in the Underlying State Action are covered by the Policy, such claims would fall under the coverage provision defined at "Coverage P"—"personal and advertising injury."  Pertinently, the Policy defines "personal and advertising injury" as:

> injury, including 'bodily injury' that is a consequence thereof, arising out of one or more of the following offenses:
>
> a.  oral or written publication . . . of material that:
>
>   1)  slanders or libels a person or organization;
>   2)  disparages a person's or an organization's goods, products, or services; or
>   3)  violates a person's right of privacy;
>
> b.  false arrest, detention, or imprisonment;

    c. **malicious prosecution**;

    d. misappropriation of advertising ideas of another in 'your' 'advertisement';

    e. infringement of the copyright, slogan, or trade-dress of another in 'your' 'advertisement'; or

    f. wrongful entry into, wrongful eviction from, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies.  This offense must be committed by or on behalf of the owner, landlord, or lessor of the room, dwelling, or premises.

[ECF 10-24 at 52-53] (emphasis added).

In the "Exclusions" section of Coverage P, the Policy specifies that: "'We' do not pay for 'personal and advertising injury' arising out of an act committed by or directed by the insured who knew that 'personal and advertising injury' would occur as a result of the act."  [*Id.* at 64].

### *Allegations in the Underlying State Court Complaint*

In the operative complaint in the Underlying State Action (the "Underlying State Court Complaint"), [ECF 10-4], Touraine alleges that in the 2015 Actions, Spruce 1530 prosecuted "frivolous claims" against Touraine "in a grossly negligent manner and/or without probable cause, and primarily for [an improper] purpose[.]"  Touraine specifically alleges, *inter alia*, the following:

> Despite being aware that 1530's[3] arguments and claims [for quiet title] were falsely made and without merit, and otherwise possessing no evidence to support those arguments and/or claims, 1530 (via Shapiro) procured, initiated and continued to prosecute the Frivolous Claims in the [2015] Actions for the improper purpose of coercing Touraine to cede ownership of its real property to 1530, including because litigating against the Frivolous Claims would be expensive and economically harmful to Touraine's planned use of the real property that Shapiro, (acting through 1530) sought, in bad faith, to make his own.  In other words, 1530's claims were nothing more than extortion by litigation.

> Touraine has. . . suffered pecuniary losses and has incurred substantial attorneys' and other professional fees and costs. . . . This harm was exacerbated by

---

[3]    To the extent that Touraine's complaint includes references to "1530," it refers to Spruce 1530, LLC.

1530's . . . use of misleading tactics and the perversion of the litigation process in the [2015] Actions including via its use of motion practice and the discovery process . . . .  Via the Frivolous Claims, 1530 . . . [put forth] arguments, assertions and so-called legal "theories" [that] were either knowingly false . . . or without merit, in that 1530 could not, at any time during the [2015] Actions . . . produce any actual evidence to support them. . . .  Defendants' sole intent was to use the Frivolous Claims for the improper purpose of coercing Touraine to involuntarily convey to 1530 the . . . [e]ncroachments [by Spruce 1530 onto Touraine's property] for zero consideration. . . .

Shapiro told [a Touraine representative] that he (Shapiro) would not remove the illegal construction, but would instead file a lawsuit on behalf of 1530 against Touraine that was "*going to cost Touraine so much time and so much money that Touraine was just going to give up*" and cede part of its real property to 1530. . . .

Throughout the [2015] Actions, 1530 . . . obstructed the necessary fact-finding process . . . .  By way of example, but not limitation, 1530 . . . verified every one of 1530's pleadings [and sent] Touraine on several "wild goose chases" . . . 1530 interposed repeated objections and delay tactics [in response to Touraine's discovery requests] . . . .  It turned out that most – if not all – of the third parties 1530 . . . identified [as having knowledge of the property boundary] had absolutely no knowledge relevant to the claims and defenses in the [2015] Actions . . . .  Making matters worse, during the depositions of the third parties whom 1530 identified, Touraine discovered . . . that there were *other* third parties whom 1530 and Shapiro . . . had not revealed to Touraine that possessed *more* relevant knowledge . . . .

1530's willful misdirection, concealment of material information, and lack of truthfulness in connection with [its discovery responses] amounted to a perversion of the legal process and, thus, made the discovery process . . . much more time-consuming and expensive than it otherwise should have been.

1530 (via Shapiro) made numerous other sweeping assertions in connection with the papers and pleadings it filed in support of its Frivolous Claims . . . that [were eventually] revealed as false and unsupported by any evidence.  Touraine was forced to incur massive expense "debunking" these assertions . . . Despite making [these] assertions, 1530 never produced a single witness or document to [prove them].

[ECF 10-4 at 6-24] (emphasis in original).

As noted, based on the above allegations, Touraine asserted state law claims for wrongful use of civil proceedings under the Dragonetti Act (Count I) (which was dismissed on preliminary objections), and common-law abuse of process (Count II).  Westminster concedes that a claim for

wrongful use of civil proceedings *would* be covered by the Policy, but argues that its dismissal by the state court prior to Westminster's receipt of notice of the claim eliminated any corresponding obligation to defend Spruce 1530 in the Underlying State Action.   The parties disagree as to whether the claim for common-law abuse of process is a covered claim.   Thus, the resolution of the cross-motions for summary judgment requires addressing two questions: whether, despite the dismissal of Count I, Westminster has a corresponding ongoing duty to defend Spruce 1530, and whether Count II is a covered claim under the Policy.   If the answer to either question is "yes," Westminster must defend Spruce 1530 in the Underlying State Action.

### Count I: Wrongful Use of Civil Proceedings

At Count I of the Underlying State Court Complaint, Touraine largely parrots the elements set forth by the Dragonetti Act,[4] and alleges that "Defendants procured, initiated and continued civil proceedings against Touraine . . . in a grossly negligent and/or reckless manner . . . without probable cause and for an improper purpose . . . in bad faith, and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the Frivolous Claims[.]" In Pennsylvania, a claim for "wrongful use of civil proceedings" under the Dragonetti Act is a malicious prosecution claim. *Regent Ins. Co. v. Strausser Enters., Inc.*, 902 F. Supp. 2d 628, 638

---

[4]     Specifically, under the Dragonetti Act, a "person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings" when:

> (1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing proper discovery, joinder of parties or adjudication of the claim on which the proceedings are based; and

> (2) The proceedings have terminated in favor of the party against whom they are brought.

42 Pa. Cons. Stat. § 8351.

(E.D. Pa. 2012) ("Malicious prosecution under Pennsylvania law—also termed 'Wrongful use of civil proceedings'—is defined by the Dragonetti Act.").

Westminster argues that because Count I was dismissed from the Underlying State Action when the trial court sustained Spruce 1530's preliminary objections, any obligation to defend that may have been triggered by this claim was likewise dismissed. Spruce 1530 disagrees and counters that because such a dismissal is "not a final, non-appealable order," which could be "modified or vacated . . . or reversed" and "may remain a factor in settlement discussions," Westminster cannot conclusively establish that the Underlying State Action will not produce a judgment covered by the Policy.

Whether a trial court's dismissal of a claim terminates an insurer's duty to defend has not been definitively answered by the Pennsylvania courts. As such, "we must predict how [the Pennsylvania Supreme Court] would rule if faced with the issue." *Spence v. ESAB Grp., Inc.*, 623 F.3d 212, 216 (3d Cir. 2010). "In making such a prediction, 'we must look to decisions of state intermediate appellate courts, of federal courts interpreting [this] state's law, and of other state supreme courts that have addressed the issue[.]'" *Id.* (quoting *Norfolk S. Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 92 (3d Cir. 2008)).

The parties suggest their own answers to this question and, unsurprisingly, rely on different sources. Spruce 1530 points to the oft-cited *Commerce & Industry Insurance Co. v. Bank of Hawaii*, 832 P.2d 733 (Haw. 1992) and *Meadowbrook, Inc. v. Tower Insurance Co.*, 559 N.W. 2d 411 (Minn. 1997), in which the Supreme Courts of Hawaii and Minnesota squarely addressed the question and concluded that "the duty to defend extends through the appellate process," *Meadowbrook*, 559 N.W. 2d at 416 or, at least, "until . . . a final judgment had disposed of the entire case[.]" *Bank of Haw.*, 832 P.2d at 737. In the years since those opinions were published,

several federal courts have relied on them in predicting their own state courts' positions. *See, e.g.*, *City of Sandusky, Ohio v. Coregis Ins. Co.*, 192 F. App'x 355, 361-62 (6th Cir. 2006); *Wells' Dairy, Inc. v. Travelers Indem. Co. of Ill.*, 336 F. Supp. 2d 906, 911 (N.D. Iowa 2004); *but see Med. Mut. Ins. Co. of Me., Inc. v. Burka*, 2017 WL 1743505, at *6 (D. Me. May 3, 2017) (declining to follow *Wells' Dairy* and holding that insurer had no ongoing duty to defend after potentially covered claim was dismissed).

Notably, however, Spruce 1530 fails to identify—and this Court could not find—a single instance in which any state or federal court in Pennsylvania reached Spruce 1530's favored holding. Instead, in interpreting Pennsylvania's rule that the duty to defend continues until the insurer can "confine" the claim "to a recovery that the policy does not cover,"[5] courts in this district have consistently treated the dismissal of covered claims as a sufficient basis for terminating an insurer's duty to defend. For example, Westminster highlights *Nationwide Mutual Insurance Co. v. Garzone*, in which the Honorable Michael Baylson rejected the argument that the duty to defend "should exist 'until such time as the Pennsylvania appellate courts decide once and for all'" the fate of dismissed claims. 2009 WL 2996468, at *9 (E.D. Pa. Sept. 17, 2009). Westminster also cites to *Meridian Mutual Insurance Co. v. James Gilligan Builders*, 2009 WL 1704474, at *2 (E.D. Pa. June 18, 2009), in which the Honorable Eduardo Robreno observed that an insurer's obligation "ceases . . . if the cause of action upon which the duty to defend exists is dismissed," and to *Palmer v. Twin City Fire Insurance Co.*, 2017 WL 5571051, at *4 (E.D. Pa. Nov. 20, 2017), in which the Honorable Wendy Beetlestone concluded that the insurer had no duty to defend an uninsured party after the insured was dismissed from the underlying suit on preliminary objections. These decisions are consistent with other decisions by other courts of this district. *See, e.g.*, *M.P. III*

---

[5]       *Unionamerica Ins. Co. v. J.B. Johnson*, 806 A.2d 431, 443-44 (Pa. Super. Ct. 2002).

*Holdings, Inc. v. Hartford Cas. Ins. Co.*, 2011 WL 2604736, at *19 (E.D. Pa. June 30, 2011) ("[t]he courts of this district have interpreted Pennsylvania case law to hold that the withdrawal or dismissal of a claim establishes that an insurer no longer has a duty to defend"); *Allstate Ins. Co. v. Sanchez*, 2003 WL 22100865, at *5 (E.D. Pa. July 30, 2003) (holding that insured are not entitled to defense by insurer if covered claims in underlying action are dismissed).

Moreover, though technically not a "final" decision from a procedural standpoint, the dismissal of a claim on preliminary objections is meant to constitute a conclusive rejection of a plaintiff's potential for recovery on that claim.  As described in *Freundlich & Littman, LLC v. Feierstein*:

> Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. . . . Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is *clear and free from doubt* that the pleader will be unable to prove facts legally sufficient to establish the right to relief.  If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

157 A.3d 526, 530 (Pa. Super. Ct. 2017) (quoting *Richmond v. McHale*, 35 A.3d 779, 783 (Pa. Super. Ct. 2012)) (emphasis added).  Here, though there is no published opinion explaining why the wrongful use of civil proceedings claim was dismissed, this Court is bound to accept the state court's ruling.  As such, and in accordance with the persuasive opinions of judges in this district, this Court predicts that the Pennsylvania high court would find that an insurer's duty to defend is extinguished by the dismissal of all covered claims, notwithstanding the possibility of future appeal.  Thus, this Court finds that Westminster has no duty to defend Spruce 1530 in the Underlying State Action based on Touraine's wrongful use of civil proceedings claim.[6]  Following

---

[6]       The parties do not dispute that Westminster was not notified of the Underlying State Action until roughly one month after Count I was dismissed.  Nevertheless, they disagree as to whether Spruce 1530 is entitled to reimbursement of litigation costs incurred prior to Count I's dismissal.  While courts applying Pennsylvania law have not unanimously embraced the argument that an insurer's duty to defend "only

this finding, the resolution of this matter will turn on whether Count II is a covered claim under the Policy.

### Count II: Abuse of Process

As noted, at Count II of the Underlying State Court Complaint, Touraine asserts an abuse of process claim. Plainly, "abuse of process" is not expressly listed among the covered claims in the Policy. Nevertheless, Spruce 1530 contends that the Policy's coverage of "malicious prosecution" claims should be read to cover Touraine's abuse of process claim. In order to determine whether this argument has any merit, this Court will consider the Pennsylvania courts' handling of malicious prosecution and abuse of process claims.

Though abuse of process and malicious prosecution are "often confused," they are in fact "separate and distinct" torts. *Werner v. Plater-Zyberk*, 799 A.2d 776, 785 (Pa. Super. Ct. 2002). Abuse of process—"the use of legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process"—is a "state *common law* claim[.]" *Id.* (emphasis added). In contrast, "allegations of malicious prosecution invoke Pennsylvania's *statutory* law. . . [the] Dragonetti Act." *Id.* (emphasis added). Pennsylvania courts have repeatedly explained the difference between malicious prosecution and abuse of process by observing that while "[t]he gist of an action for abuse of process is the improper *use of* process *after* it has been issued, that is, a perversion of it[,] [m]alicious use of civil process has to do with the wrongful *initiation* of such

---

arises after notice," *see, e.g.*, *Rite Aid Corp. v. Liberty Mut. Fire Ins. Co.*, 2006 WL 2376238, *5 (M.D. Pa. Aug. 14, 2006), this Court cannot find—and Spruce 1530 has not identified—any case in which an insurer was required to reimburse pre-notice costs despite having no ongoing duty to defend. Rather, Westminster offers several cases that generally support its position that "[o]rdinarily, the carrier's performance is not triggered until the policyholder requests that the carrier defend." *Gen. Refractories Co. v. First State Ins. Co.*, 94 F. Supp. 3d 649, 663 (E.D. Pa. 2015) (citing *Widener Univ. v. Fred James & Co.*, 537 A.2d 829, 832 (Pa. Super. Ct. 1988)). Notably, Spruce 1530 does not meaningfully attempt to respond to Westminster's argument. As such, this Court finds that Westminster is not obligated to reimburse Spruce 1530 for fees incurred prior to Count I's dismissal.

process." *P.J.A. v. H.C.N.*, 156 A.3d 284, 291 (Pa. Super. Ct. 2017) (quoting *Rosen v. Am. Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. Ct. 1993)) (emphasis added).

Though Spruce 1530 focuses on the fact that, technically speaking, the Dragonetti Act contemplates liability not merely for the "initiation" of wrongful civil proceedings, but also for their "continuation," 42 Pa. Cons. Stat. § 8351, Pennsylvania courts have defined liability under the Dragonetti Act to require that the underlying proceedings have been "*instituted* primarily for an improper cause." *P.J.A.*, 156 A.3d at 292 (citing *Hart v. O'Malley*, 647 A.2d 542, 546 (Pa. Super. Ct. 1994)) (emphasis added); *see also Sabella v. Estate of Milides*, 992 A.2d 180, 188 (Pa. Super. Ct. 2010) (citing *Hart*). On the other hand, "[a]buse of process . . . is not commencing an action or causing process to issue without justification, but misusing or misapplying process justified in itself for an end other than that which it was designed to accomplish." *In re Finney*, 184 F. App'x 285, 289 (3d Cir. 2006) (quoting *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 305 (3d Cir. 2003)). That is, where malicious prosecution focuses on the bringing of a suit, abuse of process focuses on a party's behavior *during* litigation, even where the underlying action has a legitimate basis.[7] Moreover, the elements of abuse of process, though not entirely dissimilar from those of a Dragonetti Act claim, are distinct.[8]

Spruce 1530 insists that, despite these technical distinctions, the two torts overlap sufficiently to warrant the conclusion that the Policy's "malicious prosecution" coverage includes

---

[7]    Parties may be liable for abuse of process when they "primarily intend[] to increase the burden and expense of litigation to the other side," as Touraine has alleged, but to be found liable, their "behavior must 'become so lacking in justification as to lose its legitimate function as a justifiable litigation procedure.'" *In re Finney*, 184 F. App'x at 289 (quoting *Gen. Refractories*, 337 F.3d at 308).

[8]    "To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff." *P.J.A.*, 156 A.3d at 288 (quoting *Werner*, 799 A.2d at 785). The elements of a wrongful use of civil proceedings claim are set forth at note 4, *supra*.

coverage for abuse of process.  In support of this argument, Spruce 1530 highlights a footnote from *Stone Crushed Partnership v. Kassab Archbold Jackson & O'Brien*, where the Pennsylvania Supreme Court mused that the Dragonetti Act "subsumes both the torts of malicious use of process and abuse of process."  908 A.2d 875, 877 n.1 (Pa. 2006).  However, in *Langman v. Keystone Nazareth Bank & Trust Co.*, a panel of the United States Court of Appeals for the Third Circuit observed that the statement in *Stone Crushed* "was *obiter dicta*"—not controlling precedent—and found "a judicial chorus of support" in the years after *Stone Crushed* was published for the notion that claims of abuse of process and wrongful use of civil proceedings remain distinct torts under Pennsylvania law.  502 F. App'x 220, 225 (3d Cir. 2012).  As such, the Third Circuit panel concluded that "[u]nder Pennsylvania law . . . common law abuse of process remains a separate cause of action, distinct from an action under the Dragonetti Act[.]"  *Id.*  This Court finds persuasive the analysis in *Langman*, and adopts the Third Circuit's reasoning herein.[9]

Spruce 1530 makes two additional arguments as to why Count II is covered under the Policy, *i.e.*: (1) Count II of the Underlying State Court Complaint actually includes a claim for malicious prosecution; and (2) the Policy's coverage of malicious prosecution should be construed against Westminster so as to cover abuse of process claims.  Spruce 1530's first argument is self-defeating.  Though, under its Count II heading in the Underlying State Court Complaint, Touraine

---

[9]      This Court acknowledges that *Langman* is a non-precedential opinion and appears to contradict the Third Circuit's conclusion ten years earlier in *U.S. Express Lines, Ltd. v. Higgins*, which held that "both torts are subsumed within the general scope of the [Dragonetti] Act."  281 F.3d 383, 394 (3d Cir. 2002).  However, the *Higgins* court appears to have based its analysis exclusively on its own reading of the language of the statute, rather than any Pennsylvania court's interpretation, and did not have the benefit of the "judicial chorus of support," *Stone Crushed* notwithstanding, that subsequently defined (and continues to define) malicious prosecution and abuse of process as distinct torts.  *See, e.g. Freundlich & Littman*, 157 A.3d at 531 n.3 ("We note that our Supreme Court has stated, in dicta, that the Dragonetti Act 'subsumes both the torts of malicious use of process and abuse of process.'  Nevertheless, since *Stone Crushed Partnership*, this Court has continued to recognize common law abuse of process claims.") (collecting cases); *Brobst v. Crossett*, 2017 WL 2377729, at \*6 n.8 (E.D. Pa. May 31, 2017) (rejecting *Stone Crushed* position on the basis that "[s]ubsequent decisions . . . make clear that the abuse of process tort is still recognized by the Pennsylvania courts.") (citing *Freundlich*).

"incorporates by reference . . . each of the preceding paragraphs" and echoes its Count I allegations that Spruce 1530 "procured, initiated and continued" the 2015 Actions for improper purposes, the dismissal of Touraine's Dragonetti Act claim foreclosed the possibility of recovery on these allegations, which clearly parrot the language of the Dragonetti Act. Further, "[t]o prevent artful pleading designed to avoid policy exclusions, it is necessary to look at the factual allegations in the complaint, and not how the underlying plaintiff frames the request for relief." *Allstate Ins. Co. v. Thompson*, 2006 WL 2387090, at *8 (E.D. Pa. July 19, 2006) (citing *Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999)). Westminster's duty to defend is ultimately determined by "whether, if the allegations are sustained, [it] would be required to pay resulting judgment," *Donegal*, 938 A.2d at 290, and here, the state trial court determined that Touraine would be unable to establish liability for malicious prosecution. Therefore, it is immaterial whether allegations supporting such liability appear in Touraine's "Count II" section of the Underlying Complaint.

Spruce 1530's second argument is more complex. Even acknowledging the distinction between abuse of process and malicious prosecution, Spruce 1530 argues that the Policy's "malicious prosecution" provision should be construed to cover abuse of process claims. Spruce 1530 bases this argument on its theory that the Policy's use of "malicious prosecution" is ambiguous and would, according to the "reasonable perspective of a layperson," extend coverage to abuse of process claims. Spruce 1530 is mistaken

"Our purpose in interpreting insurance contracts is to ascertain the intent of the parties as manifested by the terms used in the written insurance policy." *Donegal*, 938 A.2d at 290 (quoting *401 Fourth St., Inc. v. Inv'rs Ins. Grp.*, 879 A.2d 166, 171 (Pa. 2005)). "When the language of the policy is clear and unambiguous, we must give effect to that language." *Donegal*, 938 A.2d at 290 (quoting *Kvaerner*, 908 A.2d at 897). "However, 'when a provision in the policy is ambiguous,

the policy is to be construed in favor of the insured.'"   *Donegal*, 938 A.2d at 290 (quoting

*Kvaerner*, 908 A.2d at 897).   "An ambiguity is said to exist if there is more than one reasonable

interpretation of the term or 'if reasonably intelligent people considering the term in the context of

the entire policy would honestly differ as to its meaning.'"   *Bhd. Mut. Ins. Co. v. Salem Baptist*

*Church of Jenkintown*, 985 F. Supp. 2d 624, 631-32 (E.D. Pa. 2013).   Spruce 1530 offers little

evidence of the Policy's ambiguity beyond some historical confusion about the distinction between

malicious prosecution and abuse of process (referencing, *inter alia*, *Stone Crushed*).   Notably, this

Court could not identify any recent or local authority that supports the proposition that a Policy

provision referencing "malicious prosecution" might be ambiguous with respect to whether it

extends to abuse of process claims.[10]   Further, since Spruce 1530 has not suggested that

Westminster made any misrepresentations about the itself Policy, Spruce 1530's assertion that the

"reasonable expectations of the insured" should govern this analysis is misplaced.   *See West v.*

*Lincoln Ben. Life Co.*, 509 F.3d 160, 168-69 (3d Cir. 2007) ("In the absence of an affirmative

misrepresentation by the insurer or its agent about the contents of the policy, the plain and

unambiguous terms of a policy . . . control . . . .   An analysis of the reasonable expectations of the

insured is rightly employed when a claimant alleges that the insurer engaged in deceptive

practices[.]"); *Downey v. First Indem. Ins.*, 214 F. Supp. 3d 414, 426 (E.D. Pa. 2016) ("The law

within Pennsylvania and this circuit reflects that the 'reasonable expectations' doctrine is typically

---

[10]       Spruce 1530 identifies just one case, from the Ninth Circuit, in which a court determined that an insurance policy's coverage of "malicious prosecution" was sufficiently ambiguous as to cover claims for abuse of process: *Lunsford v. American  Guarantee & Liability Insurance Co.*, 18 F.3d 653, 655 (9th Cir. 1994).  However, in *Lunsford*, the court applied California law, and the Ninth Circuit's reasoning is, at best, obliquely relevant here.   *See id.* (observing that "California courts have not yet considered whether 'malicious prosecution' coverage includes actions for abuse of process[.]").  This Court is not bound by the Ninth Circuit's holding.

invoked where an insurer unilaterally alters the terms of the policy such that it runs contrary to the policy applied for and paid for.").

Consistent with the case law, this Court finds that where a policy provides explicit coverage for an enumerated list of recognizable torts, the injuries alleged in the underlying suit must raise a possibility of recovery for one of the listed torts in order to trigger an insurer's duty to defend. *See Roman Mosaic*, 704 A.2d at 669 (finding no duty to defend where injuries alleged in underlying action did not "arise out of" torts enumerated in the policy); *O'Brien Energy Sys., Inc. v. Am. Emp'rs' Ins. Co.*, 629 A.2d 957, 964 (Pa. Super. Ct. 1993) (policy provision at issue "extends liability coverage to the specific torts there enumerated. It affords coverage only for defined risks."); *see also CGU Ins. v. Tyson Assoc.*, 140 F. Supp. 2d 415, 420 (E.D. Pa. 2001) (analyzing whether underlying complaint alleged any torts specifically enumerated in the policy).

Here, the Policy provided coverage for injury "arising out of one or more" of a specifically enumerated list of torts including, *inter alia*, malicious prosecution. The Policy, however, does not include nor provide coverage for abuse of process claims. As noted, malicious prosecution and abuse of process are distinct torts. Therefore, this Court finds that the Policy's malicious prosecution coverage is triggered *only* by allegations giving rise to possible liability for malicious prosecution, and not by any allegations supporting a claim for abuse of process. The allegations of malicious prosecution contained in the Underlying State Court Complaint were dismissed. Under these circumstances, this Court concludes that Touraine's remaining claim for abuse of process is not covered by the Policy and, therefore, Westminster has no duty to defend Spruce 1530 in the Underlying State Action. Further, since Westminster has no duty to defend, it also has no duty to indemnify. *Permanent Gen. Ins. Co. of Ohio v. McDevitt*, 2020 WL 1329657, at *2 (E. D. Pa. Mar. 23, 2020) ("[I]f the Court concludes that an insurer has no duty to defend, it must

necessarily hold that there is no duty to indemnify[.]") (citing *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999)).

**CONCLUSION**

For the reasons set forth, this Court concludes that Westminster has no duty to defend or indemnify Spruce 1530 in the Underlying State Action.  Accordingly, Westminster's motion for summary judgment is granted, and Spruce 1530's motion for partial summary judgment is denied. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, U.S.D.C. J.